UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PAULA SHEPARD,

        Plaintiff,

    v.

JANE MILER, an individual,
CAREER PRESS, INC., NEW PAGE
BOOKS, and DOES 1-100.

        Defendants.

_____/

NO. CIV. 2:10-1863 WBS JFM

MEMORANDUM AND ORDER RE:
MOTION FOR JUDGMENT ON THE
PLEADINGS AND SPECIAL MOTION
TO STRIKE

----oo0oo----

Plaintiff Paula Shepard brought this action against

defendants Jane Miller,[1] Career Press, Inc., and New Page Books,[2]

alleging copyright infringement and related state law claims.

Presently before the court are defendants' motion for judgment on

the pleadings pursuant to Federal Rule of Civil Procedure 12(c)

----

[1]   Jane Miller is sued erroneously as "Jane Miler." (Ans.
at 1:22 (Docket No. 6).)

[2]   New Page Books is an "imprint" of Career Press, Inc.
(Ans. ¶ 4.)

1

and special motion to strike plaintiff's state law claims
pursuant to California's anti-Strategic Lawsuits Against Public
Participation ("anti-SLAPP") statute, California Civil Procedure
Code § 425.16.

I.   <u>Factual and Procedural Background</u>

        Defendant Miller is a licensed psychotherapist.
(Compl. ¶ 13.)  In 2009, she began writing a book about the use
of dogs to treat psychiatric disabilities.  (<u>Id.</u>)  Miller
contacted plaintiff, who has experience using and training
psychiatric service dogs ("PSDs"), hoping to feature plaintiff in
the book.  (<u>Id.</u> ¶¶ 12-13.)  Plaintiff agreed, and provided
information about her personal experiences using a PSD.  (<u>Id.</u> ¶
14.)  Because of plaintiff's practical experience in training
PSDs, Miller allegedly asked plaintiff for her help in drafting
those portions of the book relating to PSD training and
interaction.  (<u>Id.</u> ¶ 15.)  Plaintiff alleges that she "explicitly
told Miller that she . . . expected to be compensated for these
additional efforts," and Miller assured plaintiff that she would
be compensated by: "(a) receiving attribution in the book for her
work, (b) receiving some financial compensation from sales of the
book, and (c) being included in speaking engagements in
connection with the book . . . ."  (<u>Id.</u> ¶ 16.)  The two then
communicated by e-mail and telephone regarding the book
throughout early 2009.  (<u>Id.</u> ¶ 17.)

        As the book neared completion, plaintiff allegedly
sought to formalize their agreement, which defendants refused to
do.  (<u>Id.</u>)  Instead, defendants advised plaintiff that: "All
references to you, your experiences and any writing you did will

2

1  be removed from the book." (Id. ¶ 18.)  The book, entitled

2  "Healing Companions," was published in 2010. (Id. ¶ 19.)

3  Plaintiff alleges that she owns the copyright registration for

4  her "Work" and that portions of the Work were published in

5  "Healing Companions." (Id. ¶¶ 29, 32.)

6      Plaintiff filed this suit on July 16, 2010 (Docket No.

7  1), alleging claims for (1) fraud; (2) copyright infringement;

8  (3) common law misappropriation; and (4) violations of

9  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

10  Code §§ 17200-17210.  Defendants now move for judgment on the

11  pleadings pursuant to Federal Rule of Civil Procedure 12(c) and

12  to strike the state law claims under California Civil Procedure

13  Code section 425.16.

14  II.  Discussion

15      A.   Motion for Judgment on the Pleadings

16      "After the pleadings are closed--but early enough not

17  to delay trial--a party may move for judgment on the pleadings."

18  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion may ask for judgment

19  on the basis of plaintiff's "[f]ailure to state a claim upon

20  which relief can be granted."  Id. 12(h)(2)(B).  Such a motion is

21  essentially equivalent to a Rule 12(b)(6) motion to dismiss, so a

22  district court may "dispos[e] of the motion by dismissal rather

23  than judgment."[3]  Sprint Telephony PCS, L.P. v. Cnty. of San

24

25      [3]   The motions differ in only two respects:

26  (1) the timing (a motion for judgment on the pleadings is
   usually brought _after_ an answer has been filed, whereas
27  a motion to dismiss is typically brought _before_ an answer
   is filed) . . . and (2) the party bringing the motion (a
28  motion to dismiss may be brought _only_ by the party

3

1  <u>Diego</u>, 311 F. Supp. 2d 898, 902-03 (S.D. Cal. 2004).

2          Under Federal Rule of Civil Procedure 8(a)(2), a

3  pleading must contain "a short and plain statement of the claim

4  showing that the pleader is entitled to relief."  "To survive a

5  motion to dismiss, a complaint must contain sufficient factual

6  matter, accepted as true, to 'state a claim to relief that is

7  plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129

8  S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550

9  U.S. 544, 570 (2007)).  The Supreme Court has explained that the

10  pleading standard rests on two principles.  First, "the tenet

11  that a court must accept as true all of the allegations contained

12  in a complaint is inapplicable to legal conclusions."  <u>Id.</u>  While

13  showing an entitlement to relief "does not require 'detailed

14  factual allegations,' . . . it demands more than an unadorned,

15  the-defendant-unlawfully-harmed-me accusation."  <u>Id.</u> (quoting

16  <u>Twombly</u>, 550 U.S. at 555).  Second, "only a complaint that states

17  a plausible claim for relief survives a motion to dismiss."  <u>Id.</u>

18  at 1950.  If the pleadings "do not permit the court to infer more

19  than the mere possibility of misconduct, the complaint has

20  alleged--but it has not 'show[n]'--'that the pleader is entitled

21  to relief.'"  <u>Id.</u> (quoting Fed. R. Civ. P. 8(a)(2)).[4]

22

23          against whom the claim for relief is made, usually the
24          defendant, whereas a motion for judgment on the pleadings
           may be brought by <u>any</u> party).

25  <u>Sprint Telephony PCS, L.P. v. Cnty. of San Diego</u>, 311 F. Supp. 2d
26  898, 902-03 (S.D. Cal. 2004).

27      [4]    The parties have requested that the court take judicial
   notice of a large number of documents, most of which are not
28  judicially noticeable.  In considering a motion for judgment on
   the pleadings, a court may consider "documents attached to the

4

1          <u>Copyright Infringement Claim against All Defendants</u>

2          To establish copyright infringement, a plaintiff must

3    show (1) ownership of a valid copyright in the allegedly

4    infringed material and (2) copying of protected expression by

5    defendants.  <u>Triad Sys. Corp. v. Se. Express Co.</u>, 64 F.3d 1330,

6    1335 (9th Cir. 1995), <u>overruled on other grounds by</u> <u>Cunningham v.</u>

7    <u>Hamilton Cnty., Ohio</u>, 527 U.S. 198 (1999).

8          A copyright registration certificate is prima facie

9    evidence of copyright ownership.  <u>See</u> 17 U.S.C. § 410(c) ("In any

10   judicial proceedings the certificate of a registration made

11   before or within five years after first publication of the work

12   shall constitute prima facie evidence of the validity of the

13   copyright and of the facts stated in the certificate.").  While

14   plaintiff has failed to attach a registration certificate, she

15   alleges that she owns a copyright registration.  (<u>See</u> Compl. ¶¶

16   18, 29.)  This may or may not be sufficient to allege copyright

17   ownership.  <u>See</u> <u>Vargas v. Pfizer, Inc.</u>, 418 F. Supp. 2d 369, 373

18   (S.D.N.Y. 2005) (dismissing with leave to amend for failure to

19   attach certificate of registration).  However, defendants have

20   _____

21   complaint, documents incorporated by reference in the complaint,
     or matters of judicial notice--without converting the motion . .
22   . into a motion for summary judgment."  <u>United States v. Ritchie</u>,
     342 F.3d 903, 908 (9th Cir. 2003); <u>see</u> <u>Heliotrope Gen., Inc. v.</u>
23   <u>Ford Motor Co.</u>, 189 F.3d 971, 981 n.18 (9th Cir. 1999).  The
     court may also consider documents on which the Complaint
24   necessarily relies if their authenticity is not disputed.  <u>See</u>
     <u>Lee v. City of L.A.</u>, 250 F.3d 668, 688 (9th Cir. 2001).  On that
25   ground and because the parties have so agreed, the court will
     consider Miller's book (Notice of Lodging Document in Paper
26   Format (Docket No. 23)) and plaintiff's copyright registration
     certificate (Defs.' Req. for Judicial Notice Ex. A (Docket No.
27   10)) and deposit (Defs.' Supplemental Req. for Judicial Notice
     Ex. A (Docket No. 22)).  The court will not consider any other
28   documents in deciding the motion for judgment on the pleadings.

                                  5

1   not contested the issue, so for purposes of this motion, the

2   court assumes that plaintiff has sufficiently alleged ownership.

3         As to the second element, copying of a protected

4   expression, defendants contend that most of plaintiff's Work that

5   appears in "Healing Companions" actually originated in early

6   drafts that Miller e-mailed to plaintiff, and is thus not

7   eligible for protection.  (See Defs.' Mem. of P. & A. in Supp. of

8   Mot. for J. on the Pleadings at 9:1-16:27.)  However, the court

9   cannot look to the e-mails, which are not subject to judicial

10  notice, on a motion for judgment on the pleadings, and thus the

11  court must consider only the similarity of the Work and the book.

12        "Copying may be shown by circumstantial evidence of

13  access and substantial similarity of both the general ideas and

14  expression between the copyrighted work and the allegedly

15  infringing work."[5]  Apple Computer, Inc. v. Microsoft Corp., 35

16  F.3d 1435, 1442 (9th Cir. 1994).  Substantial similarity refers

17  to similarity of expression, not merely similarity of ideas or

18  concepts.  See 17 U.S.C. § 102(b).

19        The degree of word-for-word similarity between the

20  works here places the infringement claim in the class of cases

21  referred to by Nimmer as "fragmented literal similarity."  4

22  Nimmer on Copyright § 13.03[A][2] at 13-53.  "Fragmented literal

23  similarity exists where the defendant copies a portion of the

24  plaintiff's work exactly or nearly exactly, without appropriating

25  the work's overall essence or structure."  Newton v. Diamond, 388

26

27        [5]   Defendants do not raise the issue of whether they had
    access to plaintiff's work in this motion.  (See Defs.' Mem. of
28  P. & A. in Supp. of Mot. for J. on the Pleadings at 5 n.5.)

6

F.3d 1189, 1195 (9th Cir. 2004).  "Because the degree of similarity is high in such cases," the court should consider "whether the copying goes to trivial or substantial elements," which is measured by "considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole."[6]  Id.

In considering the qualitative and quantitative significance of the copied portion of plaintiff's Work, the court cannot conclude on the pleadings alone that there is not substantial similarity between the works.  Large portions from three out of just over nine pages constituting the Work are copied in the book with only slight modifications.  (See Defs.' Supplemental Req. for Judicial Notice Ex. A ("Healing Companions") (Docket No. 22).)  Plaintiff's Work contains two main sections: her personal story of interactions with her PSD and her advice on training PSDs.  A majority of the latter is found in Chapter Four of "Healing Companions."  (Defs.' Req. for Judicial Notice Ex. A (Docket No. 10).)  The court is not equipped to determine the qualitative importance of the section on training to the copyrighted Work as a whole on a motion for judgment on the pleadings.  On the face of the Complaint and the

_____

[6]   The fact that the majority of the book contains original material is irrelevant.  4 Nimmer on Copyright § 13.03[B][1][a] at 13-68 ("If substantial similarity is found, the defendant will not be immunized from liability by reason of the addition in his work of different characters or additional and varied incidents, nor generally by reason of his work proving more attractive or saleable than the plaintiff's.") (footnotes omitted); see Worth v. Selchow & Righter Co., 827 F.2d 569, 570 n.1 (9th Cir. 1987) ("[T]he relevant inquiry is whether a substantial portion of the protectible material in the plaintiff's work was appropriated--not whether a substantial portion of defendant's work was derived from plaintiff's work.").

documents incorporated by reference therein, plaintiff has stated a claim for copyright infringement.

Fair Use

Even if plaintiff has alleged a prima facie case of copyright infringement, defendants are entitled to dismissal if their use of the copyrighted material is protected as fair use. See 17 U.S.C. § 107.  An assertion of fair use "may be considered on a motion to dismiss, which requires the court to consider all allegations to  be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment, when no material facts are in dispute."  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 530 (9th Cir. 2008); see Savage v. Council on American-Islamic Relations, Inc., No. C 07-6076, 2008 WL 2951281, at *9 (N.D. Cal. July 25, 2008) (granting Rule 12(c) motion for judgment on the pleadings based on fair use defense).

"The fair use doctrine confers a privilege on people other than the copyright owner 'to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner.'"  Hustler Magazine Inc. v. Moral Majority Inc., 796 F.2d 1148, 1151 (9th Cir. 1986) (quoting Marcus v. Rowley, 695 F.2d 1171, 1174 (9th Cir. 1983)).  In determining whether a use is fair, courts engage in a case-by-case analysis and a flexible balancing of the following four non-exclusive factors:

> (1) the purpose  and  character  of  the  use,  including
> whether  such  use  is  of  a  commercial  nature  or  is  for
> nonprofit  educational  purposes;  (2)  the  nature  of  the
> copyrighted  work;  (3)  the  amount  and  substantiality  of
> the  portion  used  in  relation  to  the  copyrighted  work  as
> a  whole;  and  (4)  the  effect  of  the  use  upon  the  potential
> market for or value of the copyrighted work.

<u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 799 (9th Cir. 2003).

The first factor in a fair use inquiry requires the court to consider "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). Although not controlling, the fact that the work is used for a commercial or profit-making purpose as opposed to a non-profit purpose weighs against a finding of fair use. <u>Elvis Presley Enters., Inc. v. Passport Video</u>, 349 F.3d 622, 627 (9th Cir. 2003). The "degree to which the new user exploits the copyright for commercial gain--as opposed to incidental use as part of a commercial enterprise--affects the weight" afforded to commercial nature as a factor. <u>Id.</u>; <u>see also</u> <u>Harper & Row Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 562 (1985) ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."). The court must also inquire into whether the new work is transformative and does not simply "supplant" the original work. <u>Mattel</u>, 353 F.3d at 800.

The parties do not dispute that "Healing Companions" is being sold for profit. However, the section on training, in which plaintiff's Work is found, is a small portion of the book as a whole, and the commercial value of the book is not based entirely on plaintiff's Work. The book covers many aspects of PSDs, only one of which involves training. Therefore, while the book is being sold for profit and the use of plaintiff's Work may

9

have contributed to its value, the manner of commercial use does not weigh strongly against a fair use determination.  <u>See</u> <u>Kelly v. Arriba Soft Corp.</u>, 336 F.3d 811, 818 (9th Cir. 2003).

The more important inquiry under the first factor is to determine whether and to what extent the new work is "tranformative." <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 487 F.3d 701, 720 (9th Cir. 2007).  "A work is transformative when the new work does not merely supersede the objects of the original creation but rather adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." <u>Id.</u> at 720 (internal quotation marks omitted).  The more transformative the new work, the less the significance of other factors that weigh against fair use, such as use of a commercial nature.  <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 579 (1994).

Defendants' use of plaintiff's Work is significantly transformative.  Not only were plaintiff's sentences edited, clarified, and generally polished for publication, but also they form a very small portion of the book.  The book, at 256 pages, includes chapters about a woman named Mindy, finding the right dog, dogs used to serve veterans with Post-Traumatic Stress Disorder, training (the chapter in which plaintiff's Work is found), helping the PSD become part of the family, coping with the dog's stress, and dealing with aging and death of a dog.  ("Healing Companions" at 27-152.)  The book also contains several appendices with sample service dog cards, information on laws about service dogs, breeds, tasks that PSDs can perform, and an article about Miller.  (<u>Id.</u> at 153-226.)  Finally, the book

contains a list of abbreviations, a glossary, a list of
resources, and an index.  (Id. at 227-54.)  While plaintiff does
not allege the use to which she has put or intends to put her
Work, a comprehensive book on the subject of PSDs is
transformative of any use to which plaintiff's Work could be put.
The first fair use factor thus weighs heavily in favor of a fair
use determination.

          The second factor in a fair use inquiry requires the
court to consider the "nature of the copyrighted work."  17
U.S.C. § 107(2).  "Works that are creative in nature are closer
to the core of intended copyright protection than are more fact-
based works," Kelly, 336 F.3d at 820 (quoting A&M Records, Inc.
v. Napster, Inc., 239 F.3d 1004, 1016 (9th Cir. 2001)), meaning
that plaintiff's fact-based Work is more likely to be covered by
fair use.  However, the fact that a work is published or
unpublished is also a critical element of its nature because the
author's right to control the first public appearance of her work
weighs against the use of her work before its release.  Id.  When
dealing with transformative uses, this factor is not terribly
significant in the overall fair use balancing.  See Mattel, 353
F.3d at 803.  Thus, the fact that the fact-based Work was
unpublished weighs slightly, but not considerably, against a
finding of fair use.

          The third factor in a fair use inquiry requires the
court to examine the "amount and substantiality of the portion
used in relation to the copyrighted work as a whole."  17 U.S.C.
§ 107(3).  As explained above, the amount of the copyrighted Work
used in the book was significant.  Although "entire verbatim

11

reproductions are justifiable where the purpose of the work
differs from the original," Mattel, 353 F.3d at 803 n.8,
defendants put the section on training PSDs to the same purpose
for which plaintiff presumably wrote it: to provide information
about training dogs.  Thus, this factor weighs against a finding
of fair use.

        The fourth factor in a fair use inquiry focuses on "the
effect of the use upon the potential market for or value of the
copyrighted work."  17 U.S.C. § 107(4).  This factor is
"undoubtedly the single most important element of fair use."
Harper & Row, 471 U.S. at 566.  This factor requires courts to
consider not only the extent of market harm caused by the
particular actions of the alleged infringer, but also whether
unrestricted and widespread conduct of the sort engaged in by
defendants would result in a substantially adverse impact on the
potential market for the original.  Kelly, 336 F.3d at 821.  The
more transformative the new work, the less likely the new work's
use of copyrighted materials will affect the market for the
materials.  Id.  In determining whether the use has harmed the
work's value or market, courts have focused on whether the
infringing use (1) tends to diminish or prejudice the potential
sale of the work, (2) tends to interfere with the marketability
of the work, or (3) fulfills the demand for the original work.
Hustler, 796 F.2d at 1155-56.  If a use has no demonstrable
effect upon the potential market for, or the value of, the
copyrighted work, then such use need not be prohibited in order
to protect the author's incentive to create.  Sony Corp. of Am.
v. Universal City Studios, Inc., 464 U.S. 417, 450 (1984).

1    While Miller's book would likely supplant any market
2    demand for plaintiff's Work whether or not it contained the
3    copyrighted material, the court cannot determine on the pleadings
4    whether the alleged copying has any effect on the market.[7]   Thus,
5    although the book is significantly transformative, the amount of
6    alleged copying and the inability of the court to determine
7    market effect preclude the court from finding at this stage that
8    the copying constituted fair use.   Accordingly, the court will
9    deny defendants' motion for judgment on the pleadings.

10        B.   <u>Special Motion to Strike</u>

11        The California legislature enacted its anti-SLAPP
12    statute, California Civil Procedure Code § 425.16, to "allow
13    early dismissal of meritless first amendment cases aimed at
14    chilling expression through costly, time-consuming litigation."
15    <u>Metabolife Int'l, Inc. v. Wornick</u>, 264 F.3d 832, 839 (9th Cir.
16    2001).   "California's anti-SLAPP statute allows a defendant to
17    move to strike a plaintiff's complaint if it 'aris[es] from any
18    act of that person in furtherance of the person's right of
19    petition or free speech under the United States or California
20    Constitution in connection with a public issue.'"   <u>Vess v.</u>

21

22    ⁷    The court is cognizant of the need to "balance . . .
      'the benefit the public will derive if the use is permitted and
23    the personal gain the copyright owner will receive if the use is
      denied.'"   <u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792,
24    804-05 (9th Cir. 2003) (quoting <u>Dr. Seuss Enters., L.P. v.</u>
      <u>Penguin Books USA, Inc.</u>, 109 F.3d 1394, 1403 (9th Cir. 1997)).
25    Defendants' argument that "many authors and reporters conduct
      interviews by email, and denying fair use here would harm the
26    public interest by allowing sources to use copyright law to
      extort payment for, or exercise a veto over, publication of books
27    that include information provided via email" (Defs.' Mem. of P. &
      A. in Supp. of Mot. for J. on the Pleadings at 24:20-23) is
28    compelling; nonetheless, it is insufficient for a finding of fair
      use at this stage.

                                    13

1  Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003)

2  (quoting Cal. Civ. Proc. Code § 425.16(b)(1)); see also Briggs v.

3  Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1123

4  (1999) (defendants "need not separately demonstrate that the

5  statement concerned an issue of public significance").   The

6  special motion to strike under the anti-SLAPP statute is

7  available to litigants proceeding in federal court.  Thomas v.

8  Fry's Elecs., Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005).

9       "A court considering a motion to strike under the

10  anti-SLAPP statute must engage in a two-part inquiry."  Vess, 317

11  F.3d at 1110.  First, "the defendant is required to make a prima

12  facie showing that the plaintiff's suit arises from an act by the

13  defendant made in connection with a public issue in furtherance

14  of the defendant's right to free speech under the United States

15  or California Constitution."  Batzel v. Smith, 333 F.3d 1018,

16  1024 (9th Cir. 2003).  Second, "[t]he burden then shifts to the

17  plaintiff to establish a reasonable probability that the

18  plaintiff will prevail on his or her [] claim."  Id.

19       An "act in furtherance of a person's right of petition

20  or free speech" includes "conduct in furtherance of the exercise

21  of the constitutional right of petition or the constitutional

22  right of free speech in connection with a public issue or an

23  issue of public interest."  Cal. Civ. Proc. Code § 425.16(e).  To

24  "arise from" the defendant's right of petition or free speech,

25  "the defendant's act underlying the plaintiff's cause of action

26  must itself have been an act in furtherance of the right of

27  petition or free speech."  City of Cotati v. Cashman, 29 Cal. 4th

28  69, 78 (2002).  "In deciding whether the 'arising from'

14

requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" <u>Id.</u> at 79 (quoting Cal. Civ. Proc. Code § 425.16(b)).  To meet its burden, the "defendant need not show that plaintiff's suit was brought with the intention to chill defendant's speech; the plaintiff's intentions are ultimately beside the point." <u>Bosley Med. Inst., Inc. v. Kremer</u>, 403 F.3d 672, 682 (9th Cir. 2005) (internal quotation marks and citations omitted).

Plaintiff's claims for misappropriation and UCL violations arise from defendants' research and publication of a book about mental health issues and therapy, which is an act in furtherance of defendants' right of free speech in connection with an issue of public interest.  <u>See, e.g.</u>, <u>Taus v. Loftus</u>, 40 Cal. 4th 683, 713 (2007) (investigating, writing, and publishing articles about mental health issues are acts in furtherance of the exercise of free speech in connection with a public issue); <u>William O'Neil & Co. v. Validea.com Inc.</u>, 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) (book is entitled to First Amendment protections).  The fact that plaintiff alleges that the protected activity was unlawful does not change this analysis.  <u>See, e.g.</u>, <u>Navellier v. Sletten</u>, 29 Cal. 4th 82, 94 (2002) ("Plaintiff's argument 'confuses the threshold question of whether the SLAPP statute [potentially] applies with the question whether [an opposing plaintiff] has established a probability of success on the merits.'" (quoting <u>Fox Searchlight Pictures, Inc. v. Paladino</u>, 89 Cal. App. 4th 294, 305 (2d Dist. 2001)) (alterations in original)); <u>Lieberman v. KCOP Television, Inc.</u>, 110 Cal. App.

4th 156, 165 (2d Dist. 2003) ("To say that lawful newsgathering is an act in furtherance of one's right to free speech, but unlawful newsgathering is not an act in furtherance of one's right to free speech, begs the question. . . .  Once the defendant shows that the cause of action arose from acts done in furtherance of an exercise of free speech, it becomes the plaintiff's burden to establish that the acts are <u>not</u> protected by the First Amendment.").

Plaintiff's fraud claim arises not from the book's publication but from conversations between plaintiff and Miller that occurred in the course of Miller's research for the book. These conversations were themselves "in furtherance" of defendants' free speech rights. <u>See</u> <u>Taus</u>, 40 Cal. 4th at 713 (investigation is conduct in furtherance of free speech rights); <u>Lieberman</u>, 110 Cal. App. 4th at 165-66 (newsgathering is conduct in furtherance of free speech rights); <u>cf.</u> <u>Shoen v. Shoen</u>, 5 F.3d 1289, 1293 (9th Cir. 1993) (book author's conversations with sources are protected by journalist's privilege).  Thus, defendants have satisfied the initial burden of demonstrating that plaintiff's state law claims arise from defendants' acts in furtherance of their free speech rights.

The court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim[s]." <u>Navellier</u>, 29 Cal. 4th at 88.  Plaintiff must show that the claims are "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." <u>Flores v. Emerich & Fike</u>, 416 F. Supp. 2d 885 (E.D. Cal. 2006) (quoting

16

1  Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 741 (2003)).
2  In contrast to the motion for judgment on the pleadings, on this
3  prong the court "considers the pleadings and evidentiary
4  submissions of both the plaintiff and the defendant."  Jarrow, 31
5  Cal. 4th at 741 n.10.  "[T]hough the court does not weigh the
6  credibility or comparative probative strength of competing
7  evidence, it should grant the motion if, as a matter of law, the
8  defendant's evidence supporting the motion defeats the
9  plaintiff's attempt to establish evidentiary support for the
10  claim."  Id.

11        1.   Fraud Claim against Miller

12        In California, the elements of a claim for fraud are
13  "(a) a misrepresentation (false representation, concealment, or
14  nondisclosure); (b) knowledge of falsity (or 'scienter'); (c)
15  intent to defraud, i.e., to induce reliance; (d) justifiable
16  reliance; and (e) resulting damage."  In re Estate of Young, 160
17  Cal. App. 4th 62, 79 (4th Dist. 2008) (quoting Lazar v. Super.
18  Ct., 12 Cal. 4th 631, 638 (1996) (internal quotation marks
19  omitted)).  Under the heightened pleading requirement for claims
20  of fraud under Federal Rule of Civil Procedure 9(b), "a party
21  must state with particularity the circumstances constituting
22  fraud . . . ."  Fed. R. Civ. P. 9(b).  A plaintiff must include
23  the "who, what, when, where, and how" of the fraud.  Vess v.
24  Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)
25  (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

26        Plaintiff alleges that the following representations
27  constitute fraud:

28        Miler [sic] assured Shepard that Shepard would be

17

compensated for her writing by: (a) receiving attribution in the book for her work, (b) receiving some financial compensation from sales of the book, and (c) being included in speaking engagements in connection with the book (together, the "Representations")[.] Shepard agreed with this arrangement, and proceeded to write her portions of the book.

(Compl. ¶ 16.)[8]  In her declaration, she provides some additional information. In a telephone conversation on February 10, 2009, plaintiff stated that she "would only provide additional material, especially concerning [her] PSD training techniques, if [she] was paid. Ms. Miller said that she agreed, but she did not commit to a specific amount of monetary compensation." (Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings ("Shepard Decl.") ¶ 8(Docket No. 26); see id. ¶ 16.)  In another telephone conversation on May 29, 2009, plaintiff repeated her request for "tangible acknowledgment and financial compensation," and Miller said that plaintiff would be "taken care of." (Id. ¶ 9; see id. ¶ 24.)

Plaintiff's claim for fraud is neither legally sufficient nor supported by the evidence.  Even assuming Miller represented to plaintiff that she would receive monetary compensation, plaintiff admits that the amount was never discussed, and does not describe Miller's knowledge of the

---

[8]   Plaintiff does not dispute defendants' contentions that, prior to the disagreement that caused defendants to attempt to remove plaintiff's work from the book, plaintiff was going to be "credited in the acknowledgment section in addition to having her website listed in the resources section" (Mem. of P. & A. in Supp. of Special Mot. of Defs. to Strike at 4:11-12) or that speaking engagements were dependent on the success of the book. (Id. at 5:11-17.)  Plaintiff only alleges injury resulting from "not receiving the compensation that was promised." (Compl. ¶ 25.)  Thus, the only issue is whether Miller misrepresented that plaintiff would receive monetary compensation.

18

1    falsity or intent to defraud plaintiff; nor does plaintiff

2    explain how her reliance was justified or what damages she

3    incurred.   Plaintiff's allegations fall far short of the

4    particularity required for a claim of fraud, and the claim is

5    thus legally insufficient.

6         Furthermore, plaintiff's fraud claim is not supported

7    by the evidence.   Defendants have presented evidence, the

8    authenticity of which plaintiff does not dispute, that clearly

9    show by plaintiff's own admissions that she never received a

10   promise of payment.   For example, plaintiff wrote an e-mail to

11   New Page on August 12, 2009, which is referenced in her Complaint

12   (Compl. ¶ 17), explaining that she started out by merely telling

13   Miller her stories but ultimately wrote portions of the book, and

14   stating that "My contributions got to be so much of the book . .

15   . that I asked about special credit in the book which at the time

16   she assured me I would get strongly. . . .   For all that work and

17   time I think I deserve some kind of compensation and credit."

18   (Defs.' Req. for Judicial Notice Ex. C (Docket No. 10).)   In an

19   e-mail to Miller on August 17, 2009, plaintiff stated that "[i]f

20   I am going to sign [a release] it needs to be a legally binding

21   contract that spells out what I will get both as far as written

22   credit in the book and whatever financial arrangements are made

23   and agreed to <u>if any</u>."   (Miller Decl. in Supp. of Defs.' Mot. to

24   Strike Ex. S (Docket No. 11) (emphasis added).)   Most explicitly,

25   in an e-mail to Miller's attorney on August 25, 2009, plaintiff

26   stated:

27        I did not agree to provide [my training advice and
       experience as well as my advocacy experience] for free,
28        only my personal stories. . . .   I agree there was no

1  promise of financial compensation for me to relate my
2  personal stories, <u>there was no discussion about what
   would be done for anything beyond that</u> as I did not
3  expect this to happen.  Such discussions are happening
   now necessarily.

4  (Cullen Decl. in Supp. of Defs.' Mot. to Strike Ex. D (Docket No.

5  14) (emphasis added).)  Plaintiff's only response to her own

6  clear admissions that Miller never promised plaintiff financial

7  compensation is to point to her declaration, which vaguely states

8  that Miller promised plaintiff some kind of compensation in

9  telephone conversations on February 10 and May 29, 2009.

10 (Shepard Decl. ¶¶ 8-9.)  Since "defendant's evidence supporting

11 the motion defeats the plaintiff's attempt to establish

12 evidentiary support for the claim," <u>Jarrow</u>, 31 Cal. 4th at 741

13 n.10, plaintiff has failed to meet her burden of showing a prima

14 facie case of fraud.  Accordingly, the court will grant

15 defendants' special motion to strike plaintiff's claim for fraud.

16        2.    <u>Common Law Misappropriation Claim against All</u>

17              <u>Defendants</u>

18       All state law causes of action falling within the scope

19 of the federal Copyright Act are subject to preemption.  <u>Laws v.</u>

20 <u>Sony Music Entm't, Inc.</u>, 448 F.3d 1134, 1137 (9th Cir. 2006).

21 Preemption occurs when: (1) the work at issue comes within the

22 subject matter of the Copyright Act; and (2) the rights granted

23 under state law are equivalent to those protected by the Act.

24 <u>See</u> 17 U.S.C. § 301(a); <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d

25 1209, 1212 (9th Cir. 1998); <u>Valente-Kritzer Video v. Pinckney</u>,

26 881 F.2d 772, 776 (9th Cir. 1989); <u>Del Madera Prop. v. Rhodes &</u>

27 <u>Gardner, Inc.</u>, 820 F.2d 973, 976 (9th Cir. 1987), <u>overruled on</u>

28 <u>other grounds by</u> <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994).

The first prong of the test is satisfied wherever the work at issue comes within the subject matter of copyright as defined by 17 U.S.C. §§ 102 and 103.[9]  It is clear that the material upon which plaintiff's claim for misappropriation is based is within the "subject matter" of copyright.  Plaintiff's Work is a "work of authorship" within the broad definition given by the Act.  See 17 U.S.C. § 102(a)(1).[10]

The second prong of the test is satisfied whenever the rights protected by state law are equivalent to those protected by the Copyright Act.  In order to avoid preemption, "the state cause of action must protect rights which are qualitatively different from the copyright rights," Del Madera Properties, 820 F.2d at 977, and the "state claim must have an extra element which changes the nature of the action."  Id. (internal quotation marks omitted).  A court "should not rely merely on a laundry list of the alleged elements of the state law claims at issue, such that the mere possibility of an extra element protects a claim from preemption."  Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001) (internal quotation marks omitted).  Rather, the court must "engage in a fact-specific

---

[9]     The "subject matter" of copyright includes "original works of authorship fixed in any tangible medium of expression," including "literary works."  17 U.S.C. § 102(a).  Also within the "subject matter" of copyright are "compilations and derivative works."  17 U.S.C. § 103(a).

[10]     It is irrelevant whether the work in question is actually protected by copyright because "the subject matter of copyright is broader than copyright protection . . . ."  Firoozye v. Earthlink Network, 153 F. Supp. 2d 1115, 1124 (N.D. Cal. 2001).  Rather, "the issue for the purpose of a preemption analysis is whether the work involved is a kind of work that comes within the subject matter of the Copyright Act."  Id. at 1125.

1  inquiry into the <u>actual</u> allegations underlying the claims at

2  issue in the case, so as to determine whether the gravamen of the

3  state law claim asserted is the same as the rights protected by

4  the Copyright Act." <u>Id.</u>  The court considers whether the state

5  law claims as asserted are equivalent to a federal copyright

6  claim. <u>Id.</u>

7        Plaintiff has not alleged any extra element in her

8  misappropriation claim that could save it from preemption.

9  Common law misappropriation "is normally invoked in an effort to

10  protect something of value not otherwise covered by patent or

11  copyright law, trade secret law, breach of confidential

12  relationship, or some other form of unfair competition." <u>City</u>

13  <u>Solutions, Inc. v. Clear Channel Commc'ns</u>, 365 F.3d 835, 842 (9th

14  Cir. 2004) (quoting <u>U.S. Golf Ass'n v. Arroyo Software Corp.</u>, 69

15  Cal. App. 4th 607, 618 (1st Dist. 1999)). The elements of a

16  claim for misappropriation, which plaintiff has practically pled

17  verbatim, are:

18        (a) the plaintiff invested substantial time, skill or
         money in developing its property; (b) the defendant
19        appropriated and used plaintiff's property at little or
         no cost to defendant; (c) the defendant's appropriation
20        and use of the plaintiff's property was without the
         authorization or consent of the plaintiff; and (d) the
21        plaintiff can establish that it has been injured by the
         defendant's conduct.
22

23  <u>Arroyo</u>, 69 Cal. App. 4th at 618. Plaintiff's misappropriation

24  claim is based solely on rights equivalent to those granted by

25  the Copyright Act, which grants, <u>inter</u> <u>alia</u>, exclusive rights to

26  reproduce the work, prepare derivative works, and distribute

27  copies. 17 U.S.C. § 106. Since a claim for misappropriation of

28  a work protected by copyright contains no extra element to

22

distinguish it from a copyright infringement claim, it is preempted.  See Xerox Corp. v. Apple Computer, Inc., 734 F. Supp. 1542, 1550 n.15 (N.D. Cal. 1990) ("State law claims of unfair competition based on misappropriation of copyrighted material are preempted by the Copyright Act." (quoting Del Madera, 820 F.2d at 977)).[11]  Since plaintiff cannot establish a probability of prevailing, the court must grant defendants' special motion to strike plaintiff's misappropriation claim.

### 3.   UCL Claim against All Defendants

Plaintiff's UCL claim is similarly preempted, and thus she cannot establish a probability of prevailing.  The claim is based on a theory of "reverse passing-off," which is essentially equivalent to misappropriation: a defendant passes off the plaintiff's work as the defendant's own work.[12]  Xerox Corp., 734 F. Supp. at 1550.  A claim of reverse passing-off brought under the UCL contains no extra element to distinguish it from copyright infringement, and thus it is preempted by the Copyright Act.  Id. at 1550 n.15; see Kodadek, 152 F.3d at 1213 ("[I]f B is selling B's products and representing to the public that they are B's products, a claim by A that B's products replicate A's is a

---

[11]   Plaintiff essentially concedes that this claim is preempted, but argues that the court should view it as an implied-in-fact contract claim under Weitzenkorn v. Lesser, 40 Cal. 2d 778 (1953).  This argument fails for two reasons.  First, plaintiff has not pled an implied-in-fact contract, and second, the existence of such a contract would not affect the preemption analysis.  Thus, giving plaintiff leave to amend would be futile.

[12]   Reverse passing-off is different from passing-off, "the selling of a good of one's own creation under the name or trademark of another," Xerox Corp. v. Apple Computer, Inc., 734 F. Supp. 1542, 1550 n.15 (N.D. Cal. 1990), which is not preempted by the Copyright Act.  Id.

23

1  disguised copyright infringement claim and is preempted." (citing
2  1 Nimmer on Copyright § 1.01[B][1][e] at 1-24, n.110)).
3  Accordingly, the court must grant defendants' special motion to
4  strike plaintiff's UCL claim.
5          IT IS THEREFORE ORDERED that defendants' special motion
6  to strike be, and the same hereby is, GRANTED.
7          IT IS FURTHER ORDERED that defendants' motion for
8  judgment on the pleadings be, and the same hereby is, DENIED with
9  respect to plaintiff's claim for copyright infringement.
10 DATED:  December 14, 2010

12 _____
   WILLIAM B. SHUBB
13 UNITED STATES DISTRICT JUDGE

24